**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

JAMES R. HUFFMAN, IV                                                                                   PLAINTIFF

v.                                                                             CIVIL ACTION NO. 3:25-CV-P93-CRS

AMY ROBEY et al.                                                                                   DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Plaintiff James R. Huffman, IV, a prisoner proceeding *pro se*, initiated this 42 U.S.C. § 1983 action.  The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the following reasons, some claims will be dismissed while other claims will be allowed to continue.  Additionally, the Court will deny Plaintiff's motion seeking preliminary injunctive relief (DN 6).

### I. STATEMENT OF CLAIMS

Plaintiff, an inmate at the Luther Luckett Correctional Complex (LLCC), sues the following persons who work at LLCC in their individual capacities: Warden Amy Robey; APRN Elaine Smith; Wellpath Nurse Ashley Misti; Wellpath Health Services Administrator (HSA) Vaughn Ashby; Wellpath Medical Manager Dawn Patterson; and Wellpath Dr. J. Doe.  He also sues the Kentucky Department of Corrections (KDOC) and the following KDOC employees in their individual and official capacities: Medical Director Denise Burkett; Health Services Administrator/Supervisor Shawna Markham; and the Americans with Disabilities Act (ADA) Coordinator Sherrie Grissinger.

Plaintiff states that he suffers from substance-abuse disorder, especially opiate-abuse disorder (OUD), and is a qualified individual with a disability because of his OUD under the ADA

but that he is not currently engaged in drug use.  He alleges that he has been discriminated against by being prevented from participating in the medicated-assisted treatment (MAT) program which results in trouble with eating, sleeping, exercising, and attending social events.  He states that he has requested medical personnel and KDOC administrators for treatment for his OUD by being allowed to be in a MAT program repeatedly since November 2023.  He alleges that the KDOC has a custom of denying inmates MAT for OUD treatment, although they treat potential parolees who are within three years of their release date via the Supportive Assistance with Medication for Addiction Treatment (SAMAT).  Plaintiff explains that he is not eligible for parole until 2033. According to Plaintiff, since 2023, when inmates began entering prison who were already on a MAT program, the KDOC "was forced to continue their treatment via MAT" while continuing to discriminate and deny Plaintiff in violation of the ADA.

Plaintiff states that on December 14, 2023, he requested MAT at sick call; he was denied and told to write to the Health Services Division, which he did, to no avail.  Other correspondence to a number of administrators also yielded no positive results.

In June 2024, he again requested MAT at sick call, but Defendant Misti refused to process the sick call, causing him to suffer without treatment.  Plaintiff states that on August 6, 2024, he went to medical for a sick call concerning MAT, but Defendant Misti again refused to process the sick call and "laughed in his face when he told her he was sick, in a lot of pain, experiencing withdrawal from Suboxone, having anxiety, and needed help."  Then Defendant Smith ordered that Plaintiff submit to a drug test, which revealed he was positive for Suboxone, apparently procured illegally.  Defendant Smith then informed him that she would be taking him off of Gabapentin for his pain, in deliberate indifference to his serious medical need for pain treatment for his spinal injury.  He alleges that on November 11, 2024, at sick call with Defendant Smith for

2

a follow-up regarding his appointment with Norton Neuroscience Center for spinal injections which he receives quarterly for his injured back, he again begged for help with MAT and pain management.  Defendant Smith informed him that she did not have the authority or ability to request a prescription for Suboxone for him, which Plaintiff states was a lie.

Plaintiff alleges that Defendants Ashby, Patterson, and Burkett denied his grievances related to not being allowed to participate in a MAT program, failing to address the grievances, or to supervise, train, or discipline their staff.

Plaintiff alleges that all Defendants violated the Eighth Amendment in being deliberately indifferent to his serious medical need concerning his treatment for OUD by denying MAT and that Defendant Doe, the Medical Director, was aware of his serious medical needs yet acquiesced in her subordinates' behavior.

Plaintiff further states that he wrote to Defendants Robey, Crews, and Markham of his unsuccessful attempts to access MAT, but their responses were unsatisfactory.

As relief, Plaintiff requests declaratory relief, compensatory and punitive damages, and preliminary injunctive relief requiring his and other inmates' participation in the MAT program; preventing further discrimination against him and other inmates based on their disability; and preventing Defendants' use of policies, practices, and customs to deny him and other inmates medical care and protection.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C.

3

§ 1915A(b)(1) and (2).  When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Claims on behalf of others

The complaint asks for relief for other prisoners who, like him, are not allowed to participate in a MAT program.  Plaintiff also states that he would be a good representative for a class action.

As a *pro se* litigant, Plaintiff may only file a complaint on his own behalf pursuant to 28 U.S.C. § 1654, which permits parties to "plead and conduct their own cases personally or by counsel."  The United States Court of Appeals for the Sixth Circuit has "consistently interpreted § 1654 as prohibiting pro se litigants from trying to assert the rights of others." *Olagues v. Timken*, 908 F.3d 200, 203 (6th Cir. 2018).  Further, Plaintiff, acting *pro se*, cannot bring this lawsuit as a class action. *See, e.g.*, *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008).

**B. Claims against KDOC**

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). A state, its agencies, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the claims against the KDOC and the official-capacity claims against Defendants Robey, Burkett, Markham, and Grissinger for monetary relief will be dismissed for failure to state a claim upon which relief may be granted.

**C. Grievances**

Plaintiff alleges that Defendants Ashby, Patterson, and Burkett denied his grievances. Plaintiff's claims are against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See, e.g.*, *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (citation omitted); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."); *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."). Thus, he fails to state a claim related to the denial of his grievances.

**D. Supervisor liability**

Plaintiff next alleges that Defendants Ashby, Patterson, and Burkett failed to supervise, train, or discipline their staff. He also alleges that Defendant Doe acquiesced in her subordinates'

behavior and that Defendants Robey, Grissinger, Markham, and Burkett failed to supervise, train, or discipline their subordinates resulting in ADA and Eighth Amendment violations.

The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). A supervisor's failure to supervise, train, or control an employee is not actionable under § 1983 unless the plaintiff shows "the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct[.]" *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004); *Owens v. Williams*, No. 5:23-CV-P127-JHM, 2024 WL 102995, at *3 (W.D. Ky. Jan. 9, 2024). As such, Plaintiff fails to state a claim against these Defendants based on their supervisory positions.

Additionally, since Plaintiff has alleged no facts in support of his failure-to-train theory of liability, the Court finds that he has failed to state a claim upon which relief may be granted. *See, e.g.*, *Biggin v. Ohio*, No. 3:17-CV-2193, 2019 WL 3500921 at *7 (N.D. Ohio Aug. 1, 2019) ("Plaintiff's conclusory allegations, utterly devoid as they are, of any *factual* underpinning, simply cannot sustain a policy/practice failure to train claim."). These claims will be dismissed for failure to state a claim upon which relief may be granted.

**E. ADA Claims**

Plaintiff alleges that the KDOC violated Title II of the ADA by precluding his participation in programs and discriminating against him based on his disability.

On review, the Court will allow Plaintiff's ADA claims to continue against the KDOC for injunctive relief only. *See, e.g.*, *Happel v. Bishop*, No. 1:23-CV-13-SPB-RAL, 2024 WL 1508561, at *6–8 (W.D. Pa. Feb. 22, 2024) (finding inmate's ADA claim of being precluded from programs because of his inability to "concentrate, socialize, read, eat, or function properly" related to refusal to provide OUD treatment stated a claim), *report and recommendation adopted*, No. CV 23-13, 2024 WL 1003902 (W.D. Pa. Mar. 8, 2024); *Johnson v. Dixon*, No. 23-CV-23021, 2023 WL 6481252, at *3 (S.D. Fla. Oct. 5, 2023) (allowing ADA discrimination claim to continue where plaintiffs suffered from OUD, which can qualify as a disability under the ADA, and were not provided MAT); *Strickland v. Delaware Cnty.*, No. 21-4141, 2022 WL 1157485 at *3 (E.D. Penn. Apr. 19, 2022) (denying motion to dismiss where plaintiff "properly alleged that, by denying him his prescribed medication, correctional officials precluded Strickland from participating in exercise and meals").

**F. Deliberate indifference**

Plaintiff alleges that all Defendants violated the Eighth Amendment by their deliberate indifference to his serious medical needs. On review, the Court will allow Plaintiff's Eighth Amendment deliberate indifference claims to continue. *See, e.g.*, *Johnson v. Dixon*, No. 23-CV-23021, 2023 WL 6481252, at *4 (S.D. Fla. Oct. 5, 2023) (finding on initial review that prison's "alleged blanket prohibition on the administration of MAT—which doesn't take into consideration the individual prisoner's needs—might constitute 'deliberate indifference' to medical needs").

### G. Failure to protect

Plaintiff alleges that Defendants Robey, Grissinger, Smith, Burkett, Markham, Ashby, and Patterson failed to protect him through their "actions, inactions, and neglect of duty," resulting in the violation of Plaintiff's Eighth Amendment and ADA rights.  It appears that Plaintiff is referring to not being "protected" from the effects of not being in a MAT program.  However, this claim falls under the Eighth Amendment as discussed above.  Therefore, Plaintiff fails to state a separate failure-to-protect claim.

### III. Preliminary Injunctive Relief

Plaintiff's motion (DN 6) requests emergency preliminary injunctive relief based on the allegations in the complaint.

A preliminary injunction is an extraordinary remedy "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  "In deciding whether to grant a preliminary injunction, a court weighs four factors: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.'" *Tippins v. Washington*, No. 20-1480, 2021 WL 3700574, at *3 (6th Cir. Apr. 20, 2021) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)).  "As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Cntr.*, 878 F.3d 524, 527 (6th Cir. 2017).  The movant carries the burden of persuasion, and the proof required to obtain a preliminary injunction exceeds that required to survive a summary-judgment motion.  *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

This already stringent burden is even more difficult to meet where, as in this case, a plaintiff seeks an injunction not merely to maintain the status quo pending resolution of the case but to obtain affirmative relief in changing prison and medical policy.   As the Supreme Court has explained, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  Motions seeking to obtain affirmative preliminary injunctive relief must be more closely scrutinized than the already-disfavored motion for preliminary injunction which seeks to maintain the status quo.  *See, e.g.*, *Russell v. Tribley*, No. 2:10-CV-14824, 2011 WL 4387589, at *10 (E.D. Mich. Aug. 10, 2011), *report and recommendation adopted*, 2011 WL 4396784 (E.D. Mich. Sept. 21, 2011) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005); *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988)); *Doe v. Tennessee*, No. 3:18-CV-0471, 2018 WL 5313087, at *4 (M.D. Tenn. Oct. 26, 2018), *report and recommendation adopted*, 2018 WL 6181349 (M.D. Tenn. Nov. 27, 2018).

Here, Plaintiff has not shown that the issuance of a preliminary injunction is warranted. The Court has determined that Plaintiff's claims related to MAT will continue past screening, *i.e.*, that those claims have sufficient facial plausibility to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The proof required to obtain a preliminary injunction for affirmative relief exceeds even the much more demanding standard required to survive a summary-judgment motion. *Leary*, 228 F.3d at 739. The Court finds that Plaintiff fails to meet that standard.  The complaint alleges that some prisoners who entered prison while on MAT have been provided MAT and that prisoners close to release are provided MAT, while there is not a MAT program for prisoners like Plaintiff who wish to be on a MAT program but who have been in prison for years and will be for years to come.  He does

not allege that any medical provider has determined that not being provided MAT is harming him or even that he should be treated with MAT. Thus, Plaintiff has not demonstrated a substantial likelihood of success on the merits.

Additionally, the Court finds that Plaintiff has not met the irreparable-injury prong of the test. According to Plaintiff, participation in MAT would remove the "sufferings" of OUD, allowing him to eat, sleep, exercise and participate in prison activities such as movie nights and "yard days." Again, he does not allege the existence of a medical provider's determination that he should be treated with MAT. And, he states that he is not currently engaged in drug use and is not experiencing Suboxone withdrawal. *Compare Pesce v. Coppinger*, 355 F. Supp. 3d 35 (D. Mass. 2018) (court granted preliminary injunction for plaintiff, who anticipated being incarcerated and had an outside physician's prescription for methadone, to be continued on methadone, noting that his treating physician stated he presented a high risk of overdoes and death); *Smith v. Aroostook Cnty.*, 376 F. Supp. 3d 146, 161-62 (D. Me. 2019) (finding likelihood of irreparable harm where prospective inmate "presented evidence that if the Defendants curtail her MAT, she will be forced into withdrawal with painful physical symptoms and an increased risk of later relapse, overdose, and death").

The third and fourth elements also weigh against granting preliminary relief. The Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest. *Lang v. Thompson*, No. 5:10-cv-379, 2010 WL 4962933, at *7 (Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context."). Further, Plaintiff offers no evidence other than his own statements that the Court should interfere with prison and Wellpath operations in such an

10

extraordinary manner. *See Leary*, 228 F.3d at 739 (stating that proof for temporary relief "is much more stringent than the proof required to survive a summary judgment motion"). Thus, the Court will deny Plaintiff's motion (DN 6).

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims against the KDOC and Defendants Robey, Burkett, Markham, and Grissinger in their official capacities for monetary relief and all claims other than Plaintiff's ADA and Eighth Amendment claims are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted within the meaning of 28 U.S.C. § 1915A(b)(1).

**IT IS FURTHER ORDERED** that Plaintiff's motion (DN 6) is **DENIED**.

The Court will enter a separate Service and Scheduling Order to govern development of the continuing claims.

Date:  March 27, 2025

Charles R. Simpson III, Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Defendants
4411.009